UNITED STATES, Petitioner,

v.

Robert M. REDDING, Captain, Judge Advocate General's Corps., U. S. Navy, General Court-Martial Judge, Respondent.

Misc. Docket No. 79–9.

U. S. Navy Court of Military Review.

21 Dec. 1979.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

MAJ D. A. Higley, USMC, Appellate Government Counsel.

## OPINION OF THE COURT ON PETITION FOR WRIT OF MANDAMUS

CEDARBURG, Chief Judge:

The United States has petitioned this Court to issue a writ of mandamus which would compel the respondent military judge to proceed in the general court-martial case of *United States v. Pickens*. We determine that we are precluded from granting extraordinary relief in this case and, accordingly, deny the petition of the United States.

The facts leading to our present consideration of this petition follow: Seaman Pickens, while undergoing confinement imposed at a prior general court-martial, was charged with escape from confinement and desertion. The charges were referred to a general court-martial in San Diego, California by the Commandant, Eleventh Naval District on 6 March 1979. Captain Redding was detailed as military judge. Seaman Pickens, on advice of his appointed defense counsel, additionally requested Captain E. D. Clark, USMCR, as individual military counsel (IMC). The request was communicated by message to the officer exercising general court-martial authority over Captain Clark, the Commanding General, Ma-

rine Corps Base, Camp Lejeune, North Carolina. No existing or past attorney-client relationship had ever been established between Captain Clark and Seaman Pickens. The request was denied by return message, citing Captain Clark's duties as Officer-in-Charge of the Tri-Command Legal Assistance Office,[1] the lack of a replacement officer, and statistics regarding the population eligible for legal assistance, the average client workload of the office, and Captain Clark's personal client average.

An Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C.A. § 839(9), session was convened on 9 April 1979. The detailed defense counsel moved for an abatement of proceedings until the individual military counsel was made available, asserting that the Commanding General had abused his discretion in denying the request for Captain Clark to serve as IMC. The Commanding General, Brigadier General D. B. Barker, USMC, was called by the defense as a witness on the motion and was determined to be a material witness by Judge Redding. Judge Redding directed, however, that written interrogatories, as a substitute for personal testimony, be propounded to General Barker.[2] The interrogatories were answered on information and belief by General Barker, who stated that he had no personal knowledge of very specific workload and personnel utilization information sought by the interrogatories. General Barker did state that his decision as to Captain Clark's availability was personal, based upon information supplied by reliable sources, either Captain Clark or his immediate superiors. An objection by the Government to the continued materiality of General Barker as a witness was resolved by a stipulation of certain facts regarding the motion. (Appellate Exhibit I–A). The defense then acknowledged its willingness to have the motion decided upon the stipulation of fact and upon messages relating to availability of Captain Clark, which had been received in evidence by the court. (Appellate Exhibits II–A, II–B, II–C, II–D).

The military judge, in ruling on the motion, expressed his opinion that the Commanding General had abused his discretion when he determined that Captain Clark was not reasonably available to represent Seaman Pickens. Judge Redding found that "Captain Clark was, and is, reasonably available to represent the accused. . . ." A continuance until 26 April 1979 was ordered by the military judge, at which time the presence of the IMC would be expected. That ruling was affirmed on reconsideration by Judge Redding on 20 April. On 26 April, the litigants appeared with detailed counsel present but without IMC. Despite receipt of further documentation concerning the unavailability of the requested counsel, the military judge denied the convening authority's request for further reconsideration. The military judge continued the case until 4 May, at which time the Government was to be given the opportunity to show cause why the charges should not be dismissed.

A petition by the United States for a Temporary Restraining Order and a Writ of Mandamus was filed with this Court on 1 May 1979. The petition was denied, this Court reasoning that the ruling of Judge Redding did not amount to a termination of the proceedings, dismissal of the Government's case or a forestallment of the jurisdiction of this Court. The Government was granted leave to resubmit, if appropriate,

1. Marine Corps Base, Camp Lejeune, 2nd Marine Division and Second Force Service Support Group.

2. Judge Redding directed that "the interrogatories be propounded to the witness and that the witness' answers, reduced to writing and properly sworn to by an officer authorized to administer oaths, be returned to the Clerk of this Court by priority naval message not later than 24 hours after the receipt of the interrogatories." To insure that these unusually stringent time requirements were met, General Barker was awakened 0230 (2:30AM) to prepare and send his answers to the interrogatories. Under the circumstances of this case, when Seaman Pickens was serving a sentence to 21 months confinement at hard labor imposed at a prior general court-martial, we fail to see any justification for the extreme time constraints which were imposed upon General Barker. It bespeaks a judicial arrogance which detracts from respect for the judiciary.

its petition upon a future ruling. *United States v. Redding,* NCM Order Misc. Docket No. 79–8 (3 May 1979). Proceedings were abated by Judge Redding on 4 May 1979, at which time he ordered removal of the case from the trial docket.

■ Any doubt that a Court of Military Review has authority by extraordinary proceedings to confine an inferior court within its system to a lawful exercise of its prescribed jurisdiction has been dispelled by the clear holding of *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979). Moreover, extraordinary relief is not limited to an accused. The Government's entitlement is likewise beyond dispute; however, while extraordinary relief is available to the Government, it can be granted only in an appropriate case. *Id.*

The question for answer by this Court is whether a grant of extraordinary relief in this case is proper. We disagree emphatically with Judge Redding in his determination that Captain Clark was reasonably available to act as individual military counsel for Seaman Pickens. From the record we cannot with certitude conclude that Judge Redding actually employed the proper standard of abuse of discretion in reviewing the determination of General Barker. Judge Redding certainly stated that the standard he utilized was whether General Barker had abused his discretion; the result he reached, however, strongly indicates that he made his own, *de novo,* determination of availability in which he disagreed with the conclusion of the General and substituted his own judgment.

■ Article 38(b), UCMJ, 10 U.S.C.A. § 838(b), gives an accused the right to be represented by "military counsel of his own selection *if reasonably available.*" (Emphasis supplied). Neither the UCMJ nor the *Manual for Courts-Martial, 1969 (Rev.)* prescribes criteria for determination of the availability of requested counsel. *United States v. Quinones,* 1 M.J. 64 (C.M.A.1975). The *Manual,* at paragraph 48*b,* does, how-

ever, establish a procedure whereby a determination of the availability of counsel is made by the commanding officer of the organization with which the requested counsel is on duty. The exercise of administrative discretion by the commander is not absolute; the military judge may, at the trial level, scrutinize the commander's determination for an abuse of discretion. *United States v. Quinones, supra; United States v. Cutting,* 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964). The Court of Military Appeals and Courts of Military Review have identified various circumstances which can be taken into account in determining the reasonableness of availability. *See United States v. Quinones, supra* at 66 n. 4 (note cases cited therein). The guidelines formulated by these cases provide standards by which to review a commander's exercise of discretion for an abuse. *See generally United States v. Brownd,* 6 M.J. 338, 340 (C.M.A.1975) (Perry, J., concurring) (discussion of standards by which abuse of administrative discretion in the matter of deferral of post-trial confinement can be measured).

Review of the factual basis for a denial by General Barker is limited to the matters which the record shows he considered or failed to consider in his determination. The record discloses that matters considered by General Barker were set out in messages sent by General Barker in response to the original request to make Captain Clark available (Appellate Exhibit II–B) and the message replies to interrogatories (Appellate Exhibit II–D) in addition to the stipulation of fact entered into with the consent of Seaman Pickens (Appellate Exhibit I–A). The abatement motion was decided by Judge Redding on matters detailed above in conjunction with the initiating messages (Appellate Exhibits II–A and II–C).[3]

It should be noted that the truth of the statements of the Commanding General was not contested at trial. We accept those matters which are represented as fact in General Barker's messages and the stipulation as true. We also believe that any

---

3. These exhibits are included as appendices to this opinion (communications routings and symbols not pertinent to the substance of the message exhibits have been deleted).

review of General Barker's exercise of discretion was perforce limited to "consideration [of] the matters that the evidence shows were before the convening authority." *Quinones, supra* at 67. The military judge found that General Barker "was aware of all the matters contained in Appellate Exhibit Ia, as well as all the matters contained in Appellate Exhibit IIb at the time he made his decision which was reflected in Appellate IIb." The only additional evidence offered by the defense in support of his contention of discretionary abuse, which was judicially noted by the military judge, was section 1904(a), Manual of the Judge Advocate General, which provides direction for the establishment and disestablishment of legal assistance offices at, among others, each Marine Corps command exercising general court-martial authority. Judge Redding nonetheless was of the "opinion that when the Commanding General determined that Captain Clark was not reasonably available to represent the accused at this court-martial on the 9th of April 1979, that he abused his discretion."

█ We conclude that Judge Redding's ruling was erroneous. Proper application of the standard of abuse of discretion to various circumstances identified by ruling case law which can be taken into account in determining reasonable availability [4] should have led Judge Redding unerringly to the conclusion that General Barker had not abused his discretion. While case holdings of what constitutes abuse of discretion have centered on exercise of discretionary powers by trial judges, the standards are equally applicable to administrative discretionary decisions reviewable for abuse. "As a general rule, an appellate court will not review the action or rulings of the trial court with reference to matters resting in the latter's judicial discretion, unless such discretion has been clearly and prejudicially abused . . . ." 5A C.J.S. *Appeal and Error* § 1583 (1958). Judge Redding acknowl-

edged on the record in commenting on General Barker's determination of reasonable availability that when "the term 'reasonable' comes in, we are faced with an area where the minds of reasonable men might well differ." Thus, while Judge Redding explicitly recognized that the commander's decision in this case was one which might reasonably be made, he implicitly substituted his judgment for that of General Barker on the primary question of whether Captain Clark was reasonably available. This was a misapplication of the standard of review for a discretionary act.

A reviewing court is never justified in substituting its discretion for that of the trial court; in determining whether the lower court has abused its discretion, the question is not whether the reviewing court agrees with the court below, but, rather, whether it believes that a judicial mind, in view of the relevant rules of law applicable to the particular case and on due consideration of all the circumstances, could reasonably have reached the conclusion of the court below, of which complaint is made. The mere fact that the appellate court would have decided otherwise does not establish that the discretion has been abused . . . .

*Id.,* § 1583*b* at 35 (footnotes omitted). The record supports a failure of Judge Redding to fully understand and apply the law.

█ Although we determine Judge Redding's ruling that Captain Clark was reasonably available to be erroneous, our reading of *Dettinger v. United States, supra,* and the authorities cited therein, leads us to the conclusion that the extraordinary relief requested by the United States is not within our power to grant. In *Dettinger, supra* at 218, the holding of the United States Supreme Court in *Will v. United States,* 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305 (1967), was cited for the following proposition: "Mandamus . . . does not

---

4. *United States v. Quinones, supra* at 66 n. 4, citing with approval *United States v. Vanderpool,* 4 U.S.C.M.A. 561, 566, 16 C.M.R. 135, 140 (1954); *United States v. Gatewood,* 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965); *United States*

*v. Davis,* 46 C.M.R. 375 (N.C.M.R.1971), *pet. denied* 21 U.S.C.M.A. 627 (1973); *United States v. Barton,* 48 C.M.R. 358 (N.C.M.R.1973), *pet. denied* 22 U.S.C.M.A. 648 (1973).

'run the gauntlet of reversible errors' . . [i]ts office is not to 'control the decision of the trial court,' but . . . to confine . . . [it] to the sphere of its discretionary power." Judge Redding certainly had the authority to review the decision of General Barker for an abuse of discretion. *United States v. Quinones, supra; United States v. Cutting, supra; United States v. Gatewood, supra.* His action in abating proceedings to enforce his ruling as a trial judge constitutes "no violation of statute or decisional law or any provision of [regulations]". *Dettinger v. United States, supra* at 224.

Judge Redding acted within his authority. We may not utilize mandamus to substitute our discretion for that of a trial judge despite our certitude that his ruling was in error. Consequently, no grounds exist for extraordinary relief. The present case is a glaring example of the "void" involving a lack of appeal by the Government from an adverse ruling of the trial judge, "unhealthy from a judicial administration standpoint", observed by Chief Judge Fletcher in *United States v. Rowel,* 1 M.J. 289, 291 (C.M.A.1976).

The petition of the United States for a writ of mandamus is denied.

Judge FERRELL concurs.

DONOVAN, Judge (concurring):

I concur in the result. The majority refrain from granting mandamus because the military judge, although he used the wrong standard in reviewing the commander's exercise of discretion, was nevertheless within his judicial authority when he reviewed it. That the judge did not perform an impermissible act when he made the review does not, in my view, foreclose mandamus. Other reasons exist why it should not issue. This case attracts the interest of commanders as well as judge advocates because it addresses command authority and judicial authority in a special way; I offer observations on what I believe is the law in this area and the reasoning behind the result.

"The decision to issue a writ of mandamus is largely committed to the discretion of the issuing court . . . [which] can decide not to issue the writ even though such a writ, if granted, would be proper". *Citibank N. A. v. Fullam,* 580 F.2d 82, 90 (3d Cir. 1978). A divided United States Supreme Court held, in *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 666–7 n. 7, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), that mandamus should not be granted to correct a "mere . . . abuse of discretion."

Mandamus has often been granted in criminal proceedings when it was the defendant who sought relief. *See generally* Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Jurisdiction § 3936, at 260 *et seq.* (1977 & Supp.1978) (a compilation of cases and helpful commentary on the subject of extraordinary remedies). Another useful source, in reviewing the role of mandamus in federal law, has noted that:

> In the absence of a statute to the contrary, mandamus is the appropriate remedy to compel a lower federal court to assume jurisdiction and proceed to a determination of a cause where that court without sufficient reason refuses to act upon the cause. On the other hand, mandamus will not lie where the lower court has assumed jurisdiction and has decided the cause. . . .

Annot., 98 L.Ed. 114, 117–8 (1954). This language fairly explains why we refrain from granting the Government relief even while we agree that the military judge erred. Many of the major federal cases on mandamus, moreover, involve clearly contrary, almost frozen, positions. *See, e. g., La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (federal judge referred, not some issues, but an entire antitrust case to a special master, prompting both parties to complain that he was totally abdicating his judicial responsibility); *McCullough v. Cosgrave,* 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992 (1940) (a federal judge persisted in referring an entire patent case to a special master for resolution of facts, law and for proposals of recommended findings, mandamus issued to

protect the parties' rights to a judicial forum); *Ex parte United States,* 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932) (federal judge who had refused to issue a warrant based upon a proper grand jury indictment without which warrant criminal proceedings were stilled, was ordered to grant it); *United States v. Lasker,* 481 F.2d 229 (2d Cir. 1973) (federal court of appeals issued mandamus setting aside a trial judge's improper dismissal of indictments); *United States v. United States District Court,* 238 F.2d 713 (4th Cir. 1956), *cert. denied* 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957) (district judge ordered to vacate orders improperly limiting grand jury proceedings).

The parties to this case insist that their positions are unalterably adversarial, brought to a stop on the question of Captain Clark's availability. In my view, however, the two positions are not frozen. During the months that have passed, the accused may have discovered another judge advocate he would prefer instead of Captain Clark. The Captain's duties and the command's caseload may have shifted; other incidents of change common to large organizations may have occurred. Although this forum, as well as the parties in briefs and at oral arguments, address a set tableau, caught at the last ruling of the judge, I believe that these changeable factors may properly be considered when we decide whether to assert supervisory mandamus over a trial court.[1]

The importance of change was a significant element in the United States Supreme Court's decision not to uphold mandamus directing a trial judge to proceed to hear a matter where the pendency of the same issue in a state court might save unnecessary federal litigation. *Will v. Calvert Fire Ins. Co., supra.* This concern with facts is prompted by such useful guidance as the following: "supervisory mandamus is particularly ill-suited as a method of policing district court decisions that turn on issues of fact". *United States v. Griesa,* 481 F.2d

276, 278 n. 2 (2d Cir. 1973). The reason for that view is the limited factual presentation usually available to an appellate court. All of the facts on Captain Clark's nonavailability that were presented to the military judge are, admittedly, available to us. Another reason for our inaction, however, is that judicial stability is better served when appellate courts interpose themselves on matters of law rather than on individual cases of fact. Yet even these distinctions do not adequately explain our resolution of this case because this case presents mixed questions of fact and law: the facts of client caseloads and the law of reviewing discretionary acts.

The principal opinion cites the reference, in *United States v. Dettinger,* 7 M.J. 216, 217 (C.M.A.1979), to the United States Supreme Court's decision in *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), for the rule that a writ of mandamus is extraordinary. Such a writ is not lightly issued to address "the gauntlet of reversible errors" but is used to confine the trial court "to the sphere of its discretionary power." *Dettinger, supra* at 218. Since this trial judge was within the sphere of his authority when he reviewed the commanding general's determination and abated proceedings, this court declines to issue a writ of mandamus to satisfy the Government, distressed with the judge's decision which effectively blocked further prosecution of the sailor who insisted on Captain Clark as his IMC. The United States Supreme Court has stated that the mandamus power "is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power'." *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), citing *DeBeers Consol. Mines v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). Writing for the majority in *Schlagenhauf v. Holder,* 379 U.S. 104, 112, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964), Mr. Justice Goldberg noted that "[t]he writ of mandamus is not

---

1. The Court of Military Appeals' concern whether military courts may exercise supervisory mandamus on behalf of the Government is

noted. *Dettinger v. United States,* 7 M.J. 216, 224 (1979).

to be used when 'the most that could be claimed is that the . . . courts have erred in ruling on matters within their jurisdiction'", quoting *Parr v. United States,* 351 U.S. 513, 520, 76 S.Ct. 912, 100 L.Ed. 1377 (1956) and citing *Bankers Life & Casualty Co. v. Holland, supra.*

Respect requires cultivation. Judges must maintain respect for the law without unwarranted encroachment upon matters committed to command discretion. This case, if ill-received, could further destabilize the present level of equilibrium between commanders and judges. Today's commanders function under numerous recent decisions of the Court of Military Appeals which announced that commanders had abused their discretion or otherwise acted or failed to act to the detriment of service-members facing charges. In such cases, judges rarely held themselves impotent to act. Even in *United States v. Quinones,* 1 M.J. 64, 69 (C.M.A.1975), the findings and sentence were set aside where the Court of Military Appeals concluded that "the convening authority gave too little consideration to many relevant factors and inordinate consideration to the fact that Lieutenant Rich worked more than 40 hours a week."

New rules were fashioned to restrict commanders in their judicial acts. In *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), the Court of Military Appeals imposed the 90-day rule for the start of trial of those in pretrial confinement. For those confined after trial, the Court of Military Appeals, in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), subsequently overruled in *United States v. Banks,* 7 M.J. 92 (C.M.A. 1979), set another rule of mandatory, completed review within 90 days, regardless of the length of the transcript or service vicissitudes. The very act of confining a member, previously a commander's fiat, was subjected to judicial procedures at the commitment stage and preserved for judicial review at subsequent trial. *United States v. Malia,* 6 M.J. 65 (C.M.A.1978); *Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976). As a result of *United States v. Brownd,* 6 M.J.

338 (C.M.A.1979), commanders' denials of post-trial requests by accuseds for deferral of sentences to confinement were subjected to reviewable controls. Commanders, whose authority has been unrelentingly circumscribed in recent years, may regret that the instant case seems to produce no rule or procedure restrictive of trial judges and supportive of command. Accordingly, I emphasize the principal opinion's wording wherein it is held that there was "a misapplication of the standard of review for a discretionary act." The majority opinion's language, as quoted from 5A C.J.S. *Appeals and Error* § 1583b at 35 (1958), is committed to the consideration of all trial judges as guidance toward the standards to use when evaluating a commander's decision on availability. Thus a rule does emerge from this decision and it is one to guide future trial judges. Chief Judge Quinn, addressing the very issue of individual military counsel availability, expressed it succinctly in *United States v. Gatewood,* 15 U.S.C. M.A. 433, 435, 35 C.M.R. 405, 407 (1965): "In reviewing the determination, the question essentially is whether it was based upon reasonable considerations". *See United States v. Barton,* 48 C.M.R. 358, 364 (N.C.M.R.1973). Thus, it is not the trial judge's prerogative to supersede the commander's conclusion when it is based on reasonable considerations, but to review the reasonableness of the facts the commanding officer considered and the reasonableness of the commander's conclusion flowing from those facts. Since this commanding general's determination was "based upon reasonable considerations", *Gatewood, supra,* I believe that the judge should have accepted the determination and announced IMC non-availability. His duty to do so was as clear as that of the United States District Court judge to issue the warrant, fair on its face, in *Ex Parte United States, supra.* As Judge Redding appears to have strayed from the *Gatewood* guideline, he did violate "decisional law" as that criterion was referred to in *Dettinger, supra* at 224. The principal opinion makes the distinction that the judge did not violate "decisional law" or

other *Dettinger* criteria when he abated the trial proceedings. I disagree that this distinction should be dispositive since the very foundation of the abatement was his standard of reviewing the commander's decision, erroneous under *Gatewood, supra.*

There is another reason I join the majority's decision that this forum not issue the mandamus the Government seeks, although it faults the judge's action. If we order relief, it will signal encouragement to droves of future litigants to take every trial disappointment resulting from judicial discretion adverse to their interests and seek extraordinary relief at this, or a higher, forum. Such activity would further agitate an already turbulent military justice system. Inasmuch as this petition has pended so long, resolution of this matter is required.

One Congressional motive in allowing accused members to seek IMC by name probably envisioned possible lulls in the caseloads of experienced judge advocates who, in fairness, should be made available to guide less experienced appointed counsel. When commanders determine that sought talent is preoccupied, military judges should, unless the reasoning is patently unreasonable, accept the decision; defense counsel may pursue the issue on appeal if they desire.

Today's military judges work hard; their commitment to expedite trials, ABA Code of Judicial Conduct, Canon No. 3A(5), is commendable. Judge Redding had faced several delays and understandably desired accelerated resolution of the IMC issue. His message (App.Ex. II–C) was, however, unnecessarily irritating in its peremptory deadline and its requirement to place the commanding general under oath to answer twenty judicial questions. Such heavy-handedness suggests that, in his ultimate decision on IMC availability, there may have been the "usurpation of power" referred to by Chief Justice Warren in *Will v.*

*United States, supra,* 389 U.S. at 95, 88 S.Ct. at 273, 19 L.Ed.2d at 310.

Appellate Exhibit I–A

GENERAL COURT–MARTIAL
UNITED STATES NAVY
SOUTHWEST JUDICIAL CIRCUIT

| UNITED STATES | ) 11 APRIL 1979 |
| v. | ) |
| DOUGLAS M. PICKENS | ) STIPULATION OF FACT |
| SN/E–3 | ) |
| U. S. NAVY | ) |

IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PROSECUTION AND THE DEFENSE, WITH THE EXPRESS CONSENT OF THE ACCUSED, THAT THE FOLLOWING MATTERS ARE MATTERS OF FACT.

Captain E. D. Clark, USMC, is the Officer in Charge of Legal Assistance at Camp Lejeune Marine Corps Base. He is also base insurance officer. He was not detailed to any court-martials in March, 1979, and is not presently detailed to any court-martials.

Two other marine lawyers work in Legal Assistance, one since 1 July 1978 and one since 1 January 1979. These two lawyers are admitted to practice before their state bars. Three enlisted persons and one civilian give clerical assistance to the legal assistance officer.

Captain Clark's average daily work is seven hours and he works three hours on Saturday. He has appointments with clients every twenty minutes and sees walk-in clients when a scheduled appointment does not show up. With three attorneys working in legal assistance, clients wait approximately one and one-half weeks for an appointment.

All legal assistance clients see a lawyer. The legal assistance office does remain open when Captain Clark is on leave or sick.

One of the other lawyers will be leaving legal assistance in May and the other in June. It is planned to replace both officers and Captain Clark will be responsible for training their replacements.

The attorneys in legal assistance revise and review approximately 75 legal documents per week.

There has not been any appreciable increase of average workload during March and April although tax advice has increased. The attorneys advise clients and assist them in preparing the forms. The attorneys do not prepare tax returns. Captain Clark attended a tax preparer's course to make himself current on the recent changes in law and forms. Captain Clark instructs unit leaders in how to assist individuals in preparing tax returns.

/s/
G. L. WINSTEAD
Lieutenant
Judge Advocate General's Corps
U. S. Naval Reserve
TRIAL COUNSEL

/s/
H. L. SOLOMON
Lieutenant
Judge Advocate General's Corps
U. S. Naval Reserve
DEFENSE COUNSEL

I do hereby give my express consent to the use of this Stipulation of Fact.

/s/
DOUGLAS M. PICKENS
SN/E–3
U. S. Navy
ACCUSED

Appellate Exhibit II–A

FM   COMELEVEN SAN DIEGO CA
TO   CG MCB CAMP LEJEUNE NC
INFO NAVSTA SAN DIEGO CA          NAVLEGSVCOFF SAN DIEGO CA
GCM ICO SN DOUGLAS M. PICKENS, USN, 587–96–8262

1. SNM CHARGED WITH DESERTION AND ESCAPE FROM CONFINEMENT.

2. GCM CONVENED BY THIS COMMAND TENTATIVELY SKED FOR 9 APR 79 AND WILL LAST ABOUT THREE DAYS. SNM HAS REQUESTED THAT CAPTAIN ELIJAH DANE CLARK, USMC, A MEMBER OF YOUR COMMAND, BE MADE AVAIL TO ACT AS IMC IN SUBJ CASE.

3. REQ ADVISE BY MSG WHETHER REQUESTED OFFICER IS DEEMED REASONABLY AVAIL TO ACT AS IMC IN SUBJ CASE. IF DEEMED UNAVAIL, REQ MSG REPLY CONTAIN DETAILS OF OFFICER'S DUTIES, WORKLOAD, ETC, FOR USE IF DEFENSE CHALLENGES PROPRIETY OF DENIAL AT TRIAL.

Appellate Exhibit II–B

FM   CG MCB CAMP LEJEUNE NC
TO   COMELEVEN SAN DIEGO CA

GCM  ICO  SN  DOUGLAS M PICKENS, USN, 587 96 8262

A.  COMELEVEN 192354ZMAR79

1. REF A REQ CAPT ELIJAH DANE CLARK, USMC, A MEMBER OF THIS CMD, BE MADE AVAIL TO ACT AS IMC IN SUBJ CASE.

2. CAPT CLARK IS UNAVAIL FOR THE FOLL REASONS: CAPT CLARK IS THE OIC OF THE TRICOMMAND LEGAL ASSISTANCE OFFICE. HE IS ONE OF THREE JUDGE ADVOCATES AT THIS CMD WHO ARE AUTHORIZED TO WORK IN LEGAL ASSISTANCE. THE LEGAL ASSISTANCE OFFICE SERVES THE THREE MAJOR CMDS IN THIS AREA, A TOTAL MILITARY POPULATION OF APPROX 36,000. TOTAL POPULATION ELIGIBLE FOR LEGAL ASSISTANCE IS APPROX 110,000. THE OFFICE HAS A WEEKLY AVERAGE OF 220 CLIENTS AND PREPARES AND REVIEWS ON AN AVERAGE 75 LEGAL DOCUMENTS. CAPT CLARK PERSONALLY HANDLES THIRTY TO FIFTY

PERCENT OF THE AVERAGE CASE-LOAD AND SUPERVISES THE OPERATION OF THE OFFICE. CAPT CLARK'S RESPONSIBILITIES CANNOT BE REASSIGNED TEMPORARILY BECAUSE LEGAL ASSISTANCE DUTIES REQUIRE EXPERIENCE AND TRAINING. A REPLACEMENT OFFICER IS NOT AVAIL. IT IS ANTICIPATED THAT THE LEGAL ASSISTANCE CASELOAD WILL INCREASE DURING MARCH AND APRIL DUE TO INCOME TAX WORK. CAPT CLARK's DUTIES ARE CRITICAL FOR THIS CMD TO PROVIDE ADEQUATE LEGAL ASSISTANCE. ACCORDINGLY, YOUR REQ IS DENIED.

3. BGEN D. B. BARKER SENDS.

Appellate Exhibit II–C

FM NAVLEGSVOFF SAN DIEGO CA

TO CG MCB CAMP LEJEUNE NC

INFO COMELEVEN SAN DIEGO CA

NAVSTA SAN DIEGO CA

SN DOUGLAS M PICKENS, USN, 587 96 8262

1. BRIG. GEN D. B. BARKER, USMC, COMGEN, MCB, CAMP LEJEUNE, NC, HAS BEEN DETERMINED BY THE PRESIDING MILITARY JUDGE TO BE A MATERIAL WITNESS IN AN ONGOING GENERAL COURT–MARTIAL WHICH IS CURRENTLY PENDING AT SAN DIEGO, CA.

2. THE COURT HAS DETERMINED THAT THE WITNESS'S ANSWERS TO WRITTEN INTERROGATORIES MAY BE SUBSTITUTED FOR HIS PERSONAL APPEARANCE AT TRIAL.

3. IT IS REQUESTED YOU APPOINT A DEPOSING OFFICER IAW PARAS 117C[3], [4], MCM 1969, AND THAT BGEN BARKER BE PLACED UNDER OATH IN ACCORDANCE WITH JAGMAN 2402[A] AND HIS ANSWERS TO THE INTERROGATORIES SET OUT IN PARAGRAPH 6 BE RECORDED VERBATIM.

4. THE SUBJECT GCM HAS BEEN RECESSED AWAITING THE RECEIPT OF THESE INTERROGATORIES; THEREFORE, IT IS REQUESTED THAT THE ANSWERS BE TRANSMITTED BY PRIORITY NAVAL MESSAGE TO ORIGINATOR NLT 24 HRS AFTER RECEIPT OF THIS MESSAGE. THE SIGNED INTERROGATORIES BEARING THE CERTIFICATE OF THE DEPOSING OFFICER SHOULD BE PROMPTLY MAILED TO THIS COMMAND FOR INCLUSION IN THE RECORD OF TRIAL.

5. THE REPLY MESSAGE SHOULD CONTAIN THE FOLLOWING CERTIFICATE:

"[NAME OF WITNESS] HAVING BEEN FIRST DULY SWORN BY [NAME OF OFFICER ADMINISTERING OATH], THE DULY APPOINTED DEPOSING OFFICER, GAVE THE FOREGOING ANSWERS TO THE SEVERAL INTERROGATORIES. [NAME OF WITNESS] WAS GIVEN AN OPPORTUNITY TO READ HIS TESTIMONY AFTER IT WAS REDUCED TO WRITING AND ALL CORRECTIONS DESIRED BY THE ABOVE NAMED WITNESS WERE MADE. THE SIGNED INTERROGATORIES ARE BEING FORWARDED BY U. S. MAIL.

6. INTERROGATORIES:

A. PLEASE STATE WHETHER OR NOT THE TWO OTHER LEGAL ASSISTANCE ATTORNEYS WORK IN THE SAME OFFICE WITH CAPTAIN CLARK OR ARE THEY ASSIGNED TO ANOTHER OFFICE ON THE BASE.

B. PLEASE STATE HOW LONG THE TWO ATTORNEYS WHO ARE UNDER THE SUPERVISION OF CAPTAIN CLARK HAVE BEEN ASSIGNED TO LEGAL ASSISTANCE.

C. PLEASE STATE WHETHER THESE LAWYERS ARE ADMITTED TO THE BAR OF SOME STATE IN THE U.S. OR ONE OF ITS TERRITORIES OR POSSESSIONS.

D. PLEASE STATE WHETHER CAPTAIN CLARK IS PRESENTLY DETAILED AS TRIAL OR DEFENSE COUNSEL TO ANY COURTS–MARTIALS.

E. PLEASE STATE WHETHER CAPTAIN CLARK WAS DETAILED AS TRIAL OR DEFENSE COUNSEL DURING MARCH 1979.

F. IF THE ANSWER IS "YES" TO QUESTION "D" OR "E" ABOVE, HOW MANY COURTS–MARTIAL IS HE DETAILED TO AND WHEN ARE THE CASES EXPECTED TO BE TRIED.

G. PLEASE STATE HOW MANY HOURS PER DAY CAPTAIN CLARK ACTUALLY WORKS IN LEGAL ASSISTANCE EXCLUDING LUNCH AND PHYSICAL TRAINING.

H. PLEASE STATE THE NUMBER OF HOURS PER WEEK DURING THE WORK DAY THAT CAPTAIN CLARK UTILIZES FOR PHYSICAL TRAINING.

I. PLEASE STATE HOW MANY CLIENTS OUT OF THE 220 WEEKLY AVERAGE WHO RECEIVE LEGAL ASSISTANCE ACTUALLY SPEND TIME TALKING WITH A LAWYER.

J. PLEASE STATE WHETHER OR NOT THE LEGAL ASSISTANCE OFFICE UTILIZES THE AID OF ENLISTED PERSONNEL IN CARRYING OUT ITS MISSION TO PROVIDE LEGAL ASSISTANCE.

K. IF THE ANSWER TO QUESTION "J" IS "YES," PLEASE STATE HOW MANY OF 220 WEEKLY AVERAGE PROBLEMS CAN BE SCREENED OUT BY THE ENLISTED PERSONNEL WITHOUT ACTUALLY SEEING AN ATTORNEY.

L. STATE WHETHER A PROBLEM SUCH AS NON–SUPPORT WOULD NECESSITATE THE CLIENT SEEING AN ATTORNEY.

M. PLEASE STATE WHETHER THE LEGAL ASSISTANCE OFFICE WOULD REMAIN OPEN IF CAPTAIN CLARK IS ON LEAVE OR SICK.

N. PLEASE STATE WHETHER THERE IS AN EXPECTED DECREASE IN THE LAWYER PERSONNEL IN LEGAL ASSISTANCE DURING THE MONTHS OF MAY OR JUNE.

O. PLEASE STATE WHETHER THE 75 DOCUMENTS CAPTAIN CLARK REVIEWS IS ON A DAILY, WEEKLY OR MONTHLY BASIS.

P. PLEASE STATE WHETHER THE LEGAL ASSISTANCE CASELOAD APPRECIABLY INCREASED DURING THE MONTH OF MARCH AND APRIL AS ANTICIPATED.

Q. PLEASE STATE WHETHER THE LEGAL ASSISTANCE OFFICE ACTUALLY PREPARES INCOME TAX RETURNS OR ONLY ADVISES ON THE PREPARATION OF RETURNS.

R. PLEASE STATE WHAT, IF ANY, TYPE OF RETURNS ARE PREPARED BY THE LEGAL ASSISTANCE OFFICE.

S. PLEASE STATE WHETHER THE DELIVERY OF LEGAL ASSISTANCE SERVICES IS REQUIRED UNDER PRESENT MARINE CORPS REGULATIONS.

T. PLEASE STATE WHETHER CAPTAIN CLARK'S DUTIES DECREASED SINCE THE TAX SEASON IS OVER.

Appellate Exhibit II–D

FM CG MCB CAMP LEJEUNE NC

TO NAVLEGSVOFF SAN DIEGO CA

INFO COMELEVEN SAN DIEGO CA

PASS TO CAPT R. M. REDDING, USN, NAVMARJUDACT

SN DOUGLAS N. PICKENS, USN 587 96 8262; GCM ICO

A. COMELEVEN 192354ZMAR79

B. CG MCB CAMP LEJEUNE NC 202251ZMAR79

C. NAVLEGSVOFF SAN DIEGO CA 091615ZAPR79

1. REF A REQ CAPT ELIJAH DANE CLARK, USMC, A MEMBER OF THIS CMD, BE MADE AVAIL TO ACT AS IMC IN SUBJ CASE. REF B NOTIFIED COMELEVEN THAT BGEN D. B. BARKER DENIED THE REQ AND THAT CAPT CLARK WAS UNAVAIL. REF B SET OUT THE PARTICULAR FACTS UPON WHICH BGEN BARKER MADE HIS DECISION. REF C NOW REQ THAT BGEN

BARKER BE DEPOSED TO ANSWER INTERROGATORIES WHICH THE MILITARY JUDGE HAS DETERMINED MAY BE SUBSTITUTED FOR A PERSONAL APPEARANCE OF BGEN BARKER IN THE SUBJ CASE. THE CASE PROCEEDINGS HAVE BEEN CONTINUED PENDING A MSG RESPONSE TO THE INTERROGATORIES.

2. THE DECISION OF BGEN BARKER IN REF B WAS A PERSONAL DECISION; BUT IT WAS BASED ON INFORMATION PROVIDED TO HIM BY THE SJA AND DEPUTY SJA, THE IMMEDIATE SUPERVISORS OF THE LEGAL ASSISTANCE OFFICE AND OF CAPT CLARK. THE FACTS RECITED IN REF B SUPPORTING THE DECISION WERE THE INFORMATION AND BELIEF OF BGEN BARKER OBTAINED FROM RELIABLE SOURCES. BGEN BARKER HAS NO PERSONAL KNOWLEDGE UPON WHICH TO BASE ANSWERS TO THE INTERROGATORIES IN REF C. THEREFORE IT IS SUGGESTED THAT BGEN BARKER IS NOT IN FACT A MATERIAL WITNESS TO ANSWER THE INTERROGATORIES. MAJOR N. T. ROUNTREE, USMC, DEPUTY STAFF JUDGE ADVOCATE, THE IMMEDIATE SUPERVISOR OF CAPT CLARK, IS THE PERSON MOST KNOWLEDGEABLE ABOUT THE ORGANIZATION AND WORKLOAD OF THE LEGAL ASSISTANCE OFFICE. THE MILITARY JUDGE MAY WISH TO RECONSIDER HIS DETERMINATION THAT BGEN BARKER IS A MATERIAL WITNESS IN SUBJ CASE. IN THIS REGARD YOU ARE INFORMED THAT NO PERSON CONNECTED WITH THE CASE HAS CONTACTED BGEN BARKER OR THE SJA TO FIND OUT IF BGEN BARKER HAS KNOWLEDGE OF THE FACTS SOUGHT IN THE INTERROGATORIES.

3. THE FOLLOWING INFO IS PROVIDED IN RESPONSE TO THE INTERROGATORIES IN REF C. PARAGRAPHS ARE LETTERED TO CORRESPOND TO REF C. ALL ANSWERS ARE NOT PERSONAL KNOWLEDGE BUT INFO BASED ON THAT PROVIDED BY CAPT CLARK AND MAJOR ROUNTREE.

ANSWERS TO INTERROGATORIES:

A. ALL THREE LEGAL ASSISTANCE OFFICERS WORK IN BLDG 66, A COLLOCATED OFFICE FOR THREE MAJOR COMMANDS AT CAMP LEJEUNE. MOST, BUT NOT ALL, OF THE WORK IS DONE AT BLDG 66.

B. CAPT S. H. L. HONETT, USMCR, HAS BEEN IN LEGAL ASSISTANCE SINCE 1 JULY 1978. HE IS TAD FROM SECOND FSSG AND HIS ACTIVE DUTY WAS TO EXPIRE IN DEC 1978; HOWEVER, CMC EXTENDED HIS ACTIVE DUTY THRU JUNE 1979 SO THAT HE COULD CONTINUE IN LEGAL ASSISTANCE. CAPT WARREN B. CAMPBELL, USMC, HAS BEEN TAD FROM SECOND MARINE DIVISION SINCE 1 JAN 1979 TO WORK IN LEGAL ASSISTANCE.

C. CAPT CAMPBELL IS A JUDGE ADVOCATE AND A MEMBER OF THE CALIFORNIA BAR. CAPT HONETT IS A JUDGE ADVOCATE AND IS A MEMBER OF THE INDIANA BAR.

D. NO.

E. NO.

F. N/A.

G. AVERAGE DAILY WORK IS SEVEN HOURS. APPOINTMENTS WITH CLIENTS ARE SCHEDULED FOR EACH ATTORNEY EVERY TWENTY MINUTES. WALK–IN CLIENTS ARE SEEN WHEN ATTORNEYS ARE AVAILABLE DUE TO CANCELLED APPOINTMENTS. WITH THREE ATTORNEYS WORKING THROUGHOUT YEAR, CLIENTS WAIT APPROXIMATELY ONE AND A HALF WEEKS FOR AN APPOINTMENT. CAPT CLARK HAD TO INTERRUPT ONE APPOINTMENT AND CANCEL ANOTHER TO ANSWER THE INTERROGATORIES. CAPT CLARK HAS BEEN WORKING THREE HOURS ON SATURDAY.

H. FIVE HOURS PER WEEK DURING LUNCH HOURS.

I. ALL LEGAL ASSISTANCE CLIENTS SEE A QUALIFIED LEGAL ASSISTANCE OFFICER.

J. THREE ENLISTED PERSONS AND A CIVILIAN GIVE CLERICAL SUPPORT. THE CIVILIAN IS ALSO THE NOTARY PUBLIC AND PASSPORT AGENT FOR THIS AREA.

K. NO CLIENTS ARE SCREENED OUT BY CLERKS. MISSION IS TO PROVIDE ASSISTANCE OF AN ATTORNEY, NOT SCREEN PROBLEMS OUT.

L. YES.

M. YES, BUT CAPT CLARK IS THE ONLY AVAILABLE OFFICER WHO HAS BEEN SCHOOL TRAINED TO HANDLE FEDERAL INCOME TAX MATTERS. HE ATTENDED TAX PREPARER'S COURSE TO MAKE HIM CURRENT ON THE RECENT CHANGES IN LAW AND FORMS. HE WILL NOT BE GRANTED LEAVE AGAIN UNTIL JUNE.

N. CAPT HONETT WILL LEAVE THE OFFICE IN MAY AND CAPT CAMPBELL WILL END TAD IN JUNE. IT IS PLANNED TO REPLACE BOTH OFFICERS, AND CAPT CLARK WILL BE RESPONSIBLE FOR THE TRAINING.

O. THE ATTORNEYS IN LEGAL ASSISTANCE REVISE AND REVIEW APPROX 75 DOCUMENTS PER WEEK.

P. THERE HAS NOT BEEN ANY APPRECIABLE INCREASE OF AVERAGE WORKLOAD DURING MARCH AND APRIL ALTHOUGH TAX ADVICE HAS INCREASED.

Q. THE ATTORNEYS ADVISE TAXPAYERS AND ASSIST THEM IN PREPARING THE FORMS. THE ATTORNEYS DO NOT PREPARE TAX RETURNS. IN ADDITION, CAPT CLARK INSTRUCTS UNIT LEADERS IN HOW TO ASSIST INDIVIDUALS IN PREPARING RETURNS.

R. NONE ARE PREPARED. ASSISTANCE IS GIVEN WITH FORM 1040 AND 1040A AND ALL SCHEDULES.

S. LEGAL ASSISTANCE IS REQUIRED BY NAVY REGULATIONS. CHAPTER XIX OF THE MANUAL OF THE JAG OF THE NAVY APPLIES.

T. THE QUESTION IS UNINTELLIGIBLE. THE TAX SEASON IS NOT OVER. FEDERAL INCOME TAX DEADLINE FOR INDIVIDUALS IS 17 APR 1979, BUT TAXPAYERS REQUIRE LEGAL ASSISTANCE ON TAX MATTERS THROUGHOUT THE YEAR. THE WORKLOAD DOES SEEM TO PEAK IN MARCH AND APRIL. ON 9 APR 1979 CAPT CLARK HAD FOUR TAX CLIENTS, TWO APPOINTMENTS AND TWO WALK-INS.

4. CAPT CLARK ALSO PERFORMS DUTIES AS THE BASE INSURANCE OFFICER.

5. SINCE THE SUBJ PERSON IS CONTINUING HIS REQ FOR CAPT CLARK, THE DECISION IN REF B HAS BEEN RECONSIDERED IN LIGHT OF THE ADDITIONAL INFORMATION ABOVE. IT IS DECIDED THAT CAPT CLARK IS NOT REASONABLY AVAILABLE. THE WORK THAT CAPT CLARK IS PERFORMING IN LEGAL ASSISTANCE IS IMPORTANT WORK THAT HE IS SPECIFICALLY TRAINED TO DO. HE CANNOT BE REPLACED BY ANY OTHER OFFICER THAT IS AVAILABLE TO THIS COMMAND. HIS ABSENCE FROM THIS COMMAND NOW OR IN THE NEAR FUTURE WOULD DISRUPT THE OPERATION OF THE LEGAL ASSISTANCE OFFICE.

BGEN BARKER SENDS.