UNITED STATES, Appellant-Petitioner,

v.

Robert M. REDDING, Captain, Judge Advocate General's Corps, U. S. Navy, General Court-Martial Judge, Appellee-Respondent.

No. 38,437.
Misc. No. 80–48.

U. S. Court of Military Appeals.

June 8, 1981.

For Appellee-Respondent: *Lieutenant Patrick A. Fayle*, JAGC, USN (argued); *Lieutenant Commander David S. Durbin*, JAGC, USNR (on brief).

For Appellant-Petitioner: *Major Dewayne Littlejohn*, USMC (argued); *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant Colonel D. A. Higley*, USMC (on brief).

## OPINION OF THE COURT

COOK, Judge:

By Certificate for Review [1] and a Petition for Extraordinary Relief in the Nature of Mandamus and Appeal from Adverse Decision of the United States Navy Court of Military Review,[2] the Government challenges the legality of a ruling by the trial judge of a general court-martial which rejected a command determination that a military lawyer requested by the accused under Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), was unavailable to serve as accused's individual military counsel. The issues were briefed and argued, along with a motion by the respondent to dismiss the Certificate for Review.

### I

### THE MOTION TO DISMISS THE CERTIFICATE FOR REVIEW

Under Article 67(b)(2) and (d), UCMJ, 10 U.S.C. § 867(b)(2) and (d), the Judge Advo-

---

1. *United States v. Redding*, 8 M.J. 223 (C.M.A. 1980).

2. 9 M.J. 414 (C.M.A.1980) [listed under petitions].

cate General of a service is empowered to order sent to this Court "all cases reviewed by a Court of Military Review" for review of "issues raised by him." In substance, Judge Redding contends that a case within the phrase "cases reviewed" means one that has been tried in an inferior tribunal of the military justice system—a court-martial—and has resulted in a conviction and approval by the requisite command authority, with a sentence that requires referral to the Court of Military Review under Article 66(b), UCMJ, 10 U.S.C. § 866(b), or is a court-martial conviction reviewable by the Judge Advocate General and referred by him to the Court of Military Review, as provided by Article 69, UCMJ, 10 U.S.C. § 869. Since the proceeding for extraordinary relief was initiated directly in the Court of Military Review, Judge Redding maintains that the court's disposition of it was a decision in the first instance, not a review of a court-martial adjudication.

■ As Judge Redding does not oppose the Government's right to appeal the Court of Military Review's decision and the issues of the appeal comprehend those of the Certificate, a favorable decision on his motion to dismiss would not affect review of the merits. That circumstance would, normally, incline us to pass over the motion. *See United States v. Tavares*, 10 U.S.C.M.A. 282, 283, 27 C.M.R. 356, 357 (1959). However, the increasing number of proceedings for extraordinary relief, in the service appellate courts manifests a need to determine whether the certificate authority provided by Article 67 extends to an application for extraordinary relief from a court-martial action at the command level that is not subject to the regular review prescribed by the Code. In this situation deferral of decision merely to conserve judicial time would be inappropriate.

■ Under the Uniform Code, "judicial or quasi-judicial" courts-martial actions are taken at three levels: the command or trial level; the review level of the accused's service; and in this Court. *United States v. Reeves*, 1 U.S.C.M.A. 388, 390, 3 C.M.R. 122, 124 (1952). Viewing the word "review" in the light of courts-martial practice previous to the Uniform Code, it unquestionably meant the examination of the record of a court-martial in which the accused had been tried and convicted. That meaning is plainly reflected in the word as it appears in the Uniform Code [3] and in the Manuals for Courts-Martial [4] promulgated by the President since the Code's enactment. The definition of the term "reviewing authority" in dictionaries of military terms in common use after enactment of the Code reflects that meaning. For example, Dahl and Whelan, *The Military Law Dictionary* 138 (1960), defines a reviewing authority as a "[p]erson or appellate agency who must approve and affirm the findings and sentence of a court-martial before sentence may be carried out." *See Dictionary of United States Army Terms* 451 (AR 310–25, June 1, 1972); *The United States Air Force Dictionary* 442 (1956); and *The New Military and Naval Dictionary* 219 (1951). However, since shortly after the Code became operative, increasingly, persons have sought extraordinary relief from court-martial actions at the trial level that are unreachable through the regular channels of review. *See generally Soriano v. Hosken*, 9 M.J. 221, 224 (C.M.A.1980) (Cook, J., dissenting), and *McPhail v. United States*, 1 M.J. 457 (C.M.A.1976). As such applications proliferated in the courts of review, this Court added new rules of practice for an appeal from an adverse determination. Later, the Court formally ruled that Courts of Military Review are "empowered to provide extraordi-

---

**3.** *See* Articles 59(b), 62, 65, 66, 67(b), (c) and (d), 69, 71(c), and 76, Uniform Code of Military Justice, 10 U.S.C. §§ 859(b), 862, 865, 866, 867(b), (c) and (d), 869, 871(c), and 876, respectively, all under subchapter IX, captioned, "Review of Courts-Martial."

**4.** *See* Manual for Courts-Martial, United States, 1951, Chapter XVII, Initial Review of and Action on Records of Trial; Chapter XIX, Action After Promulgation; and Chapter XX, Appellate Review-Execution of Sentences, and similarly numbered and titled chapters in the Manual for Courts-Martial, United States, 1969 (Revised edition).

nary relief." *Dettinger v. United States,* 7 M.J. 216, 219 (C.M.A.1979). This proceeding provides the first occasion to consider whether final action by a Court of Military Review on a petition for extraordinary relief from a trial court ruling constitutes a "case" reviewed within the meaning of Article 67(b)(2) and qualifies the proceedings for certification to this Court by the Judge Advocate General. We now hold that proceedings of the kind in issue are certifiable.

■ Conceptionally, a proceeding for extraordinary relief is separate from a court-martial trial in which a conviction has resulted. Such a proceeding may concern issues wholly unrelated to guilt. In *Fleiner v. Koch,* 19 U.S.C.M.A. 630 (1969), for example, a writ of prohibition was granted by this Court to prevent trial of the petitioner for an offense over which the military had no jurisdiction. Furthermore, the standards for award of relief on appellate review of a court-martial conviction are different from those governing extraordinary relief. *Dettinger v. United States, supra* at 217. Still, the juristic process of examining trial proceedings of a conviction subject to review as prescribed by the Uniform Code is the same as that required as regards a trial forum action that is subject to scrutiny by a higher court on application for extraordinary relief. In both instances, the process qualifies as a "review" of what was done in the trial forum, as that word is commonly understood.

■ Turning to whether the proceedings here constitute a "case," we note at the outset that the word was variable meanings, depending upon the context of its use.[5] As used in Article 67(b)(3), it does not include "an interlocutory, nonappealable order."[6] An erroneous determination that requested counsel is unavailable does not preclude a court-martial from proceeding with the trial; in other words, the determination does not deprive the court-martial of jurisdiction. *United States v. Johnson,* 23 U.S.C.M.A. 148, 48 C.M.R. 764 (1974). *See*

*Soriano v. Hosken, supra* at 225 (Cook J., dissenting), and *United States v. Batts,* 3 M.J. 440 (C.M.A.1977). In the event of conviction, however, the accused can, on appellate review, assert the adverse determination as error justifying reversal of his conviction. *United States v. Quinones,* 1 M.J. 64 (C.M.A.1975). As to an accused, therefore, a determination of unavailability is interlocutory in nature. *See United States v. Best,* 6 U.S.C.M.A. 39, 44, 19 C.M.R. 165, 170 (1955). However, the situation is different when the trial judge dismisses the charges, or takes other action that effectively precludes prosecution of them, because he concludes that a command determination of unavailability was wrong. Such action ends court-martial proceedings on the charges; it is, therefore, not an intermediate or interlocutory order but a final decree.

■ Without setting forth all the proceedings that followed the initial determination by Judge Redding that the commander of the requested counsel had erred in declaring him unavailable, it is clear, as the assistant trial counsel argued on a motion to rescind the judge's initial action, later rulings "operate[d] . . . as an effective curtailment and permanent forestalling" of the prosecution. Considering the accused's right to a speedy trial, dismissal was predictable and imminent; the posture of the proceedings, therefore, was tantamount to "a final disposition of the case." *United States v. Knudson,* 4 U.S.C.M.A. 587, 595, 16 C.M.R. 161, 169 (1954) (Brosman, J., concurring in the result opinion). In these circumstances, the Government was not required to wait for affixation of the stamp of dismissal; believing that Judge Redding had already exceeded his power as a trial judge, it could properly apply to the Court of Military Review for an extraordinary writ to compel him to confine his judicial orders within permissible bounds. We entertain no doubt, therefore, that, in reviewing the proceedings before Judge Redding, the Court of Military Review reviewed a case

**5.** *United States v. Best,* 4 U.S.C.M.A. 581, 583, 16 C.M.R. 155, 157 (1954).

**6.** *United States v. Best,* 6 U.S.C.M.A. 39, 43, 19 C.M.R. 165, 169 (1955).

within the meaning of Article 67(b)(2), UCMJ.

■ A second aspect of the review processes under the Uniform Code reenforces our conclusion. A general court-martial conviction in which the adjudged sentence is insufficient to qualify the case for automatic review by the Court of Military Review under Article 66 of the Code can nonetheless be referred to the court for review by the Judge Advocate General. A case of this kind, however, is not subject to further review by this Court on petition of the accused, but it is certifiable to the Court by the Judge Advocate General. This congressional differentiation in respect to access to this Court impels the conclusion that Congress intended every court-martial proceeding considered by a Court of Military Review to be subject to certification by the Judge Advocate General. The reason is obvious—a ruling of law made by the court is important to the service generally, irrespective of the sentence imposed upon the particular accused. As this Court said in *United States v. Monett*, 16 U.S.C.M.A. 179, 181, 36 C.M.R. 335, 337 (1966):

> Congress provided the certification process as the means of achieving certainty in, and uniformity of, interpretation of the Uniform Code in each armed force, as well as for all the armed forces.

■ Nothing in the language of Article 67(b)(2) suggests exceptions to the certification authority. If, despite the absence of limitation, exceptions are, as Judge Redding argues, graftable into the text, then exceptions might also be engraftable on an accused's right to appeal to this Court from an adverse decision of the Court of Military Review rendered on an application for extraordinary relief. In material part, the language of Article 67(b)(3), which grants accused in "all cases reviewed" by a Court of Military Review the right to petition this Court for further review, is identical to that of Article 67(b)(2). When two parts of a single statutory provision use the same language, presumptively the meaning of the language in each part is the same. Established practice has never even hinted that

subsection (b)(3) contains exceptions to the right of an accused to petition for review; it also argues against a conclusion that subsection (b)(2) is less comprehensive than its language indicates. For the reasons stated, we deny the motion to dismiss the certificate for review.

## II

### THE GOVERNMENT'S RIGHT TO APPEAL

■ As indicated earlier, Judge Redding does not oppose the Government's right to appeal from the decision of the Court of Military Review on the application for extraordinary relief. Nevertheless, in his dissenting opinion, Judge Fletcher contends that the Government has no right to appeal. In his view, Rule 3(b)(2) of this Court's Rules of Practice and Procedure (*see* 4 M.J. XCVII), which authorizes such appeals, contemplates only "some party other than the government." As the cited subdivision of the Article pertains to petitions to this Court for grant of review by accused, he concludes that only an accused can appeal from an adverse decision on an application for extraordinary relief. Chief Judge Everett and I are of the opinion that the Government has the same right as an accused to such an appeal.

Chief Judge Everett's reasons are set out in his separate opinion. For myself, I believe it sufficient to point out that Rule 3(b)(2), which deals with the jurisdiction of the Court, does not say the Court will entertain petitions by accused; it declares it may "entertain petitions from adverse decisions" made by a Court of Military Review on applications for extraordinary relief, without particularizing who may be a petitioner. Similarly, Rule 15(d), *id.* at CIII, which deals with appeal from an adverse decision, refers only to the filing of an appeal, without any indication that the right to appeal is limited to special persons or parties.

■ In *Dettinger v. United States, supra,* the Court expressly upheld the right of the Government to apply to the Court of Military Review for extraordinary relief.

As Judge Fletcher suggests, some of the matters referred to in Rules 25 and 26 of our current rules may be inappropriate to an appeal by the Government, but I do not see our inexactitude in formulation of the rules as a reason to deny the Government the right to appeal. I regard our rules as expressive of this Court's intention to encourage initial application for extraordinary relief to the respective Courts of Military Review rather than to this Court and as assuring, through the unrestricted language of its empowerment provisions, that a party adversely affected by the decision of a Court of Military Review can appeal to this Court.

### III

### THE TRIAL JUDGE'S DETERMINATION AS TO THE AVAILABILITY OF RE-QUESTED INDIVIDUAL MILITARY COUNSEL

Charges of desertion and escape from confinement were lodged against Seaman Douglas M. Pickens and, in due course, were referred to trial by a general court-martial constituted at the United States Naval Station, San Diego, California. On Monday, April 9, 1979, the case came up for trial. Before assembly of the court members, Judge Redding, the detailed judge, held an Article 39(a) [7] session to conduct the standard preliminary inquiries, including that regarding accused's representation by counsel. He was informed that Lieutenant Solomon represented the accused as detailed defense counsel. The accused told Judge Redding he had been in telephone communication with a civilian lawyer, who had said he "would" represent him, and whom the accused thought would so do, because they had effected a "satisfactory arrangement." He also disclosed he had "put in" a request for individual military counsel. For convenience, we set out separately the proceedings as to civilian and military counsel.

### A. *Proceedings as to civilian counsel*

The civilian lawyer was not present at the hearing. The accused had not contacted him until the previous Saturday and counsel had asked Lieutenant Solomon to request a continuance. The judge declined to rule on the request until he was furnished the information required by "Rule IV of the Court Rules that relate[d] to continuances." [8]

Although trial counsel, Lieutenant Georgia L. Winstead, contended that as an accused could not have both civilian and individual military counsel [9] and, therefore, accused's representation by civilian counsel mooted the issue of individual military counsel, Judge Redding considered a defense motion for appropriate relief from the denial of accused's request for the latter. Before the session was concluded, Lieutenant Solomon advised Judge Redding he had been unable to communicate with the civilian lawyer. Thereupon, the judge allowed him until "tomorrow morning" to submit the required Rule IV information. Whether the required matter was submitted on April 10th is not apparent.

On April 11th, the Article 39(a) session reconvened. The subject considered was the accused's request for individual military counsel. Judge Redding ruled that the commander who denied it had "abused his discretion." Further, the judge found that the lawyer "was, and is, reasonably available to represent the accused at this court-martial." He continued the trial to April 26, indicating that he expected individual military counsel to "be made available a reasonable time in advance" of that date to prepare for trial. His last remarks before ending the session concerned civilian counsel. In material part, he said:

> I'm going to direct the defense counsel, that you will contact the civilian counsel that the accused appears to have retained. Advise him of the time and date this court will convene for the purpose of

---

7. UCMJ, 10 U.S.C. § 839(a).

8. No copy of the rule appears in the record.

9. *See United States v. Jordan*, 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973); *cf. United States v. Jorge*, 1 M.J. 184 (C.M.A.1975).

continuing the trial in this case. And if you are unable to contact him by telephone today, you will send notification to him by mail with a certified receipt that if he is going to enter an appearance in this case to represent the accused, that he will be present and prepared to proceed with this case at 0900, on Thursday the 26th of April 1979.

After the April 11th session, trial counsel filed a motion for reconsideration of the abuse-of-discretion ruling. An Article 39(a) session was held on the morning of April 20th. At this session, trial counsel adverted to her previous contention that accused's representation by civilian counsel precluded exercise of the right to elect representation by individual military counsel. Judge Redding questioned the accused to determine "just exactly what" civilian counsel's status was.

Excerpts from the inquiry set out below [10] indicate that the accused made representations about his dealings with civilian counsel that were inconsistent with his representations at the April 9th session. Judge Redding did not call attention to the inconsistencies; instead, he remarked that it had been his "impression" that accused had merely been "negotiating" with counsel. Accordingly, he concluded it was not "necessary to get into" the effect of retention of civilian counsel on the issue of the availability of individual military counsel.

Noting that the request for military counsel had been made "back in March," he was of the opinion that whether the accused had "civilian counsel at this time" had "no bearing" upon whether the commander who denied the request had "abused his discretion"; and he, therefore, saw no "necessity for the accused to make an election at this time on civilian counsel."

### B. Proceedings as to Individual Military Counsel

As earlier indicated, at the April 9th Article 39(a) session, Judge Redding took up a defense motion for appropriate relief. The relief asked was that further proceedings be abated until the requested military lawyer was "made available," or, alternatively, that the charges be dismissed.

Requested military counsel was Captain Clark, USMC. He was on duty as head of a tricommand Legal Assistance Office, Camp Lejeune, North Carolina. The request for him had been filed on March 14, 1979, and had been denied on March 20 by Brigadier General D. B. Barker, Commanding General of Camp Lejeune.

In his written denial, General Barker stated that "Capt[ain] Clark's duties . . . [were] critical for" the command. Among other things, General Barker indicated the legal office had a very heavy current workload and a further increase was "anticipated . . . during March and April due to

**10.**

| April 9th Session | April 20th Session | April 9th Session | April 20th Session |
|---|---|---|---|
| MJ: He said that he would represent you?<br>ACCUSED: Yes, sir. | MJ: Now, when we talked about Mr. Bennett at an earlier session of this court, you had indicated that you felt you had retained him, is that correct?<br>ACCUSED: No, sir. I had said I had tried to get in contact with him. | MJ: I don't want to know what it is. I just want to know whether you made a satisfactory arrangement.<br>ACCUSED: Yes, sir.<br>MJ: And he said he would represent you?<br>ACCUSED: Yes, sir. | ACCUSED: No, sir, not at this time. |
| MJ: Have you come to a fee arrangement, an agreement, with Mr. Bennett?<br>ACCUSED: Yes, sir, we talked about it on the phone. | MJ: Okay. You said also I believe that you had some satisfactory fee arrangements with him?<br>ACCUSED: No, sir. I talked to him about a fee on the phone. | MJ: And did you tell him that you were going to court, that your court was going to start today?<br>ACCUSED: Yes, sir. | MJ: Had he agreed to represent you prior to the time that this court convened on the 9th of April?<br>ACCUSED: Prior to that, sir?<br>MJ: Yes.<br>ACCUSED: No, sir. |
| MJ: And have you made a satisfactory agreement with him with regard to representing you?<br><br>ACCUSED: I think so. Because when I talked to him on the phone—— | . . . . .<br>MJ: All right. And is he representing you as your attorney? | | . . . . .<br>MJ: So your negotiations and conversations with Mr. Bennett were with a view to his representation, is that correct?<br>ACCUSED: Yes, sir. |

income tax work." He represented that no "replacement" was available for the length of time Captain Clark would probably have to be in San Diego for the accused's case. Defense counsel acknowledged that no attorney-client relationship had previously existed between Captain Clark and the accused.

We put aside interim rulings on the motion, one of which was an order directing that written interrogatories be submitted to General Baker for answer by "priority . . . message" within 24 hours of receipt. Suffice it to note that Judge Redding was informed the accused had "appealed" the denial of his request for Captain Clark "to the Commandant of the Marine Corps." The appeal had been filed on April 5, but no decision on it had been received. Additionally, he was apprised that the accused had made "a subsequent IMC request for a Captain Thompson," which was still "[p]ending," but, as to that request, "the defense took the position" it would "await the final decision . . . of the availability of Captain Clark from the Commandant of the Marine Corps." Judge Redding made no comment on the pending appeal and asked for no particulars as to the request for Captain Thompson.

Judge Redding ruled that General Barker had "abused his discretion" in declaring Captain Clark not reasonably available to represent the accused. He found "in connection with that determination that Captain Clark was, and is, reasonably available."

On Friday morning, April 20th, at another Article 39(a) session, Judge Redding considered a government request for reconsideration of his ruling. Asserting that he "reviewed all of the evidence anew," he adhered to it.

On the day set for trial, April 26th, Judge Redding held another Article 39(a) session. He received copies of an exchange of electronic messages between the convening authority and General Barker. The convening authority had informed General Barker of Judge Redding's reaffirmation of his ruling and requested that he declare Captain Clark

available. In reply, General Barker detailed circumstances that had arisen since his last communication, which, he said, demonstrated that "Capt Clark's absence will disrupt important . . . work" of the command. Again, trial counsel moved for reconsideration. Declaring that he had accorded the Government "adequate time" to seek review of his ruling, Judge Redding summarily denied the motion. Informed that an "appeal [was] being typed up," he continued the "proceedings" to May 4th, at which time, he said the Government "will have the opportunity to show cause . . . why these Charges should not be dismissed."

In the interim between April 26th and May 4th, the Government applied to the United States Navy Court of Military Review for a restraining order to prevent dismissal of the charges. The Court of Military Review denied the application on the ground that Judge Redding's rulings were still interlocutory in nature; but the court reserved to the Government the right to apply for relief from any future order that satisfied the "criteria" for exercise of the court's extraordinary writ authority.

Responding to Judge Redding's oral order to show cause why the charges should not be dismissed, Lieutenant Kelley, the assistant trial counsel, called attention to a declaration in the Court of Military Review's order to the effect that the Government had persuasively demonstrated that dismissal of the charges "would be inappropriate as a matter of law." Judge Redding ordered the proceedings "abated," and removed the case from the trial docket.

After the May 4th Article 39(a) session, Lieutenant Kelley inquired of General Barker whether he could anticipate Captain Clark's availability in the foreseeable future. General Barker advised him that the need for Captain Clark was even more imperative because the command had become responsible for the investigation of "an extraordinarily complex case." He expected that the investigation would "severely tax all avail[able] lawyer resources for months." Acknowledging his appreciation of the

"duty to cooperate with courts in militar[y] justice matters," General Barker stated that he could not "disrupt other important work of" his command by releasing Captain Clark for detail as accused's counsel.

Informed of the latest message from General Barker, Judge Redding held an Article 39(a) session on May 14. He stated he had again examined the transcripts of the various proceedings, and he "reaffirmed" the ruling and his order removing the case "from the trial docket" and abating the proceedings "until further notice of the Court."

As we noted in Part I, the Government filed a Petition for Writ of Mandamus in the United States Navy Court of Military Review. On December 21, 1979, the court denied it. In its opinion, the court declared that Judge Redding's ruling overturning General Barker's determination of Captain Clark's unavailability "was erroneous" because he had "implicitly substituted his judgment for that of General Barker," instead of applying the legal standard for review of the General's discretion.[11] *United States v. Redding*, 8 M.J. 719, 722 (N.C.M.R. 1979). Nevertheless, it denied the Government relief on the supposition that, under *Dettinger v. United States, supra* at 222–224, it lacked judicial authority to direct Judge Redding to correct his mistake.

Following the court's decision, Judge Redding held additional Article 39(a) sessions to consider disposition of the case. On July 15, 1980, he ordered the Government to show cause by August 4 why the charges should not be dismissed. Before that date, the Government obtained from this Court a stay of further proceedings. 9 M.J. 253 (1980).

## IV

### IMPROPER DENIAL OF AN ACCUSED'S REQUEST FOR INDIVIDUAL MILITARY COUNSEL DOES NOT JUSTIFY DISMISSAL OF THE CHARGES AGAINST HIM

"Proper application of the [correct] standard" for review of General Barker's determination of the unavailability of Captain Clark, said the Court of Military Review, "should have led . . . unerringly to the conclusion that General Barker had not abused his discretion." *United States v. Redding, supra* at 722. But, as earlier noted, the court believed that, under *Dettinger*, it could not overturn the judge's decision. We conclude that the court was mistaken.

In *Dettinger*, the trial judge dismissed the charges referred to trial on the ground the accused had been denied a speedy trial, as prescribed by an Air Force Manual. The Government petitioned the Air Force Court of Military Review for extraordinary relief from the order of dismissal. The court held that the judge's order was an "usurpation of power" and set it aside. The accused challenged the decision in this Court and we reversed it. We held that when a trial judge performs a discretionary act within the bounds of his legal authority, a superior tribunal will not, in the exercise of its extraordinary writ powers, substitute its own discretion for that of the trial judge. *Id.* at 224. To determine whether dismissal of the charges was a lawful remedy for the deprivation suffered by the accused, the Court examined the constitutional and statutory provisions as regards denial of a speedy trial. For violation of the constitutional right to a speedy trial, the sole remedy is dismissal of the charges. *Strunk v. United*

---

11. Indeed, Judge Redding erred in other important respects: He did not consider the effect of the pendency of the appeal from General Barker's determination to the Commandant of the Marine Corps, as the next superior commander, which is the prescribed first proceeding for challenge of a denial. (*See United States v. Zimmerman*, 47 C.M.R. 800, 802 (N.C.M.R. 1973), and *United States v. Cutting*, 14 U.S.C. M.A. 347, 350, 34 C.M.R. 127, 130 (1964)). He did not consider the effect of the accused's later request for Captain Thompson as individual military counsel, and he did not inquire whether official action had been taken on that request before defense counsel had declared his intention not to rely on the request until "final decision" by the Commandant of the Marine Corps. He did not adequately determine whether the accused was simply mistaken as to retention of civilian counsel or had actually terminated an existing relationship.

*States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). The same sanction is provided by Article 10, UCMJ, 10 U.S.C. § 810, for the Government's failure to take "immediate steps . . . to try" an accused who has been placed in arrest or confinement; and that provision has been scrupulously enforced by this Court. *United States v. Henderson,* 1 M.J. 421 (C.M.A. 1976); *United States v. Burton,* 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971). The Air Force Manual was silent as to the allowable sanction for the Government's violation of the time limits it provided for prosecution of court-martial charges. Observing that the "declared purpose of the Air Force Manual . . . [was] to implement the general law on prompt disposition of a court-martial matter," and that no "particular[ized] remedy" was specified for a violation of the Manual provisions, as in *United States v. Lasker,* 481 F.2d 229 (2d Cir. 1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974), the Court concluded that "no violation of statute or decisional law" resulted from the trial judge's invocation of "the usual remedy for violation of prescriptions for prompt disposition of a case." *Id.* at 223–24.

 The remedy for denial of the right to counsel is entirely different. Dismissal of charges for even a "deliberate" violation of the constitutional right to counsel "is plainly inappropriate." *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The "remedy characteristically imposed," said the Supreme Court—and only if the deprivation cannot be disregarded as "harmless error," —is to order a rehearing. *Id.* at 668. When the Government is constitutionally obligated to provide counsel, the accused does not have a right to select counsel of his own choice. Military practice, however, grants an accused the privilege of selecting his own counsel subject to the requirement that counsel be reasonably available for detail. Articles 32(b) and 38(b), UCMJ, 10 U.S.C. §§ 832(b) and 838(b), respectively. Unlike Article 10, as regards speedy disposition of charges, Article 38(b) does not authorize dismissal of the charges for a mis-

taken determination that requested military counsel is not reasonably available to represent the accused at trial. The Manual for Courts—Martial, United States, 1969 (Revised edition), particularizes some forms of relief, but also does not mention dismissal of the charges. Consequently, unless judicial precedents establish dismissal as an allowable remedy for deprivation of this statutory right, Judge Redding's action is completely outside the established legal framework that surrounded the order of dismissal in the *Dettinger* case. Instead of precluding inquiry into the legitimacy of the power claimed by Judge Redding, the *Dettinger* opinion commands it. *See Soriano v. Hosken, supra* at 224.

 Nothing in the Uniform Code indicates who decides whether requested counsel is reasonably available. However, the President has directed that the commander of requested counsel make the initial determination. Where, as here, requested counsel is not a member of the "immediate command" of the convening authority, the request is forwarded for determination by the "commanding officer . . . of the organization . . . with which the requested counsel is on duty." Para. 48*b*(1) and (2), 1969 Manual, *supra.* Since that direction is not contrary to, or inconsistent with, the Uniform Code, and, is within the President's authority to prescribe appropriate procedural rules under Article 36, UCMJ, 10 U.S.C. § 836, it has the force of law. *United States v. Smith,* 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962).

The Uniform Code is also silent as to what an accused can do if he believes himself wronged by a denial of his request. The President provided for that contingency, and this Court has explicated his instructions.

Paragraph 48*b,* Manual for Courts—Martial, United States (1951), was in effect when the Uniform Code became operative. It provided that a determination of unavailability by requested counsel's commander was "subject to . . . appeal" to the "next superior authority." The provision, how-

ever, did not indicate how an accused could be assured of judicial review of the correctness of an adverse command determination. To bridge the void, this Court fashioned an appropriate procedure. *United States v. Cutting,* 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964). The declared purpose of the procedure was to "preserve the issue [of availability of counsel] for ultimate appellate scrutiny," if review was "necessary." *Id.* at 351, 34 C.M.R. 131.

Review of a determination of unavailability is obviously not "necessary" if accused is found not guilty. However, if accused is convicted, appellate scrutiny of the denial of requested counsel is possible only when all material facts are in the record. To achieve that end, the Court said in *United States v. Cutting, supra* at 352, 34 C.M.R. at 132:

> [T]he case before us teaches the need to record the action of appropriate officers on accused's request together with any reason for its refusal. Only then will this Court and other agencies be able to make an enlightened decision concerning its disposition before or at trial. Truly, knowledge judicially set down is the soundest basis for informed action and when it is absent, we are faced with the unsatisfactory alternatives of reversing in order to allow orderly development of the facts or categorically affirming a serious penalty in light of what may fairly prove to be an improper ruling concerning a fundamental right. All this can be avoided by simply making the proceedings part of the transcript when, as here, the issue arises.

Thus, like the Uniform Code, the 1951 Manual did not authorize dismissal of the charges for an improper determination of the availability of requested counsel. And *Cutting* does not suggest it is an allowable remedy for a perceived violation of the accused's statutory right.

Not long after *Cutting,* the Court denied relief for an alleged improper denial of

requested counsel because, at trial, the accused had not raised the issue. *United States v. Mitchell,* 15 U.S.C.M.A. 516, 36 C.M.R. 14 (1965). In its opinion, the Court noted that raising the issue at trial can avoid "meaningless proceedings and unnecessary remedial steps." The Court pointed out that the trial judge was a proper "functionary from whom relief should be sought when a request for special counsel has not been honored." *Id.* at 520, 36 C.M.R. at 18. Again, however, the Court did not identify dismissal of the charges as an allowable remedy for the error.

■ Several years after *Cutting* and *Mitchell,* the President promulgated the current Manual. Paragraph 48 of the new Manual carries forward the right to appeal from an adverse command determination of unavailability of requested counsel to the "next higher commanding officer or level of supervision," other than that at the departmental level. Also, like its predecessor, new paragraph 48 contains no language stating or implying that a facially erroneous determination of unavailability justifies dismissal of the charges. Two kinds of actions by a trial judge are specified in the 1969 Manual which were not in the 1951 Manual. First, the 1969 Manual provides that the pendency of an appeal from an adverse determination is "a proper ground for postponement or continuance of the trial." Secondly, responding to the Court's opinion in *Cutting,*[12] the 1969 Manual directs that the accused's request and the adverse actions thereon "shall be made a matter of record and be included with the record of trial." Nothing suggests that a different procedure applies where the adverse determination is facially insufficient. The inference, therefore, is that while the trial judge can take a number of actions to insure that a complete record of the matter is included in the record of trial, he cannot dismiss the charges without a trial because the accused had been denied military counsel of his choice.

---

**12.** Analysis of Contents, Manual for Courts—Martial, United States, 1969 (Revised edition),

DA Pamphlet 27–2 (July 1970).

*Cutting* noted that the purpose of obtaining the record of accused's request and the action thereon is to "preserve" the issue for "appellate scrutiny." In *United States v. Quinones, supra*, the Court held that denial of accused's request was error, but the Court did not dismiss the charges for that reason. A rehearing, the Supreme Court said in the *Morrison* case, is the "characteristically imposed" remedy for a denial of counsel. In *United States v. Batts, supra*, the accused contended he had been deprived of his right to individual civilian counsel, within the meaning of Article 38(b), because his Philippine lawyer was not also a member of an American bar. The Court assumed that, under the Article, civilian counsel was disqualified from acting for the accused, but it held that the error was not "jurisdictional" and could be disregarded because it did not prejudice the accused as he was effectively represented by appointed defense counsel who had been retained by the accused as "associate counsel." 3 M.J. at 441.

██ In *United States v. Morrison, supra*, 101 S.Ct. at 668, the Supreme Court indicated that a claim of deprivation of counsel is "subject to the general rule that remedies should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interests." As *Batts, Quinones*, and *Cutting* demonstrate, a balance of competing interests is involved in a decision as to the availability of individual counsel. On the one hand is the need the military commanders perceive for the services of the requested counsel to accomplish the military mission; on the other is the accused's desire for that particular lawyer. To throw into the balance on the side of the accused the prospect that charges will be dismissed in advance of trial if the commander mistakes his assessment of the needs of his command impresses us as being contrary to the limitation Congress imposed on the accused's right to select a lawyer of his own choice. As the right is not absolute and an improper denial of it can be disregarded because of absence of prejudice to the accused, dismissal of the charges is an ill-suited remedy for the injury. We hold, therefore, that a trial judge has no authority to dismiss charges referred to trial, or otherwise prevent further proceedings in the case, because he concludes that the command determination of nonavailability is so wrong as to constitute an abuse of discretion.

We answer in the negative so much of the certified question as asks whether the Court of Military Review was "correct in determining that it lacked authority to grant" extraordinary relief and so much of issue I of the Government's Petition for Extraordinary Relief, which, similarly, asks whether the Court of Military Review "was correct as a matter of law when it held that 'the extraordinary relief requested by the United States is not within . . . [its] power to grant.'" We return the record of the proceedings to the Judge Advocate General of the Navy for submission to the Court of Military Review for further action consistent with our decision.

EVERETT, Chief Judge (concurring):

As the dissent points out, the Rules of this Court contemplate that an appeal to us from an adverse decision by the Court of Military Review on a petition for extraordinary relief will be filed by some party other than the Government. *See* Rules 3(b)(2), 15, 25, 26, Rules of Practice and Procedure, United States Court of Military Appeals, 4 M.J. XCVII, CIII, CXII, CXIII. This language of our Rules can be explained in either of two diametrically opposed ways: (a) It was assumed that the Government would use the certification procedure to bring cases to this Court from the Court of Military Review where extraordinary relief is involved; or (b) No means exists whereby the Government can obtain review in this Court of an adverse decision by the Court of Military Review on an extraordinary writ. Whatever our Rules provide—and regardless of the premise on which they are based—they may not in my view preclude the Government from exercising a power given to it by Congress.

Since we conclude that the Government is properly before us pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2), we need not decide whether (1) the literal wording of our Rules can be stretched to authorize access to this Court by the Government by means of a petition for discretionary review in a case involving extraordinary relief; or (2) whether, if not our Rules could be redrafted to allow such access. Since the greater usually includes the lesser, I am inclined to the conclusion that—whatever our Rules may now be construed to provide—valid rules of this Court can be promulgated under Article 67(a)(1), UCMJ, 10 U.S.C. § 867(a)(1), which would allow the Government to petition this Court to review in its discretion an adverse decision by the Court of Military Review on an extraordinary writ. Admittedly, it can be argued that Congress contemplated that, if a Judge Advocate General believes that a case has an issue which merits review by this Court, then he should compel an answer by us through use of certified questions pursuant to Article 67(b)(2). However, it would seem equally consistent with the congressional intent for the Judge Advocate General also to be allowed to present an issue to this Court as to which we may at the outset decide whether, in our discretion, full scale review is warranted in the case then at hand. Certainly the trend in appellate courts—perhaps induced in part by heavy judicial workloads—is to move away from mandatory review towards granting the appellate courts some discretion to determine whether an issue should be decided in a particular case. Indeed, this Court has over the years construed the literal wording of Article 67(b)(2) in a way which permitted some leeway to leave questions unanswered that the Judge Advocate General had certified under Article 67(b)(2).[1]

I agree with the principal opinion that this case differs from *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979). Here, of course, the military judge was dealing with an accused's statutory right to be provided by the Government with counsel of his choice, rather than with a right to be brought to trial within a prescribed period of time. As the principal opinion points out, dismissal of charges usually is not an appropriate remedy even for deprivation of the Sixth Amendment right to counsel— which is more fundamental than the statutory right of an accused to select a particular military attorney to represent him. Thus, in *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the Supreme Court reversed a decision by a Court of Appeals, which had ordered dismissal of an indictment to remedy an egregious violation of the defendant's Sixth Amendment right to counsel. In light of this precedent, I conclude that, in a case like the one at bar, the trial judge had no authority to dismiss the charges as the remedy for a supposed abuse of a commander's discretion in failing to provide the requested military counsel.[2]

Of course, the trial judge should allow the parties to present on the record for future appellate review all the circumstances they consider relevant to a possible abuse of discretion by the commander who has declined to make available the requested military defense counsel. Moreover, the judge can make findings as to any disputed facts. Thereafter, if an abuse of discretion has occurred in the denial of the accused's request and if the accused is convicted, his remedy will lie in seeking a rehearing upon direct appellate review.

FLETCHER, Judge (dissenting):

I

My sources for interpreting Article 67(b)(2), Uniform Code of Military Justice,

---

1. Thus, we have declined to answer questions which were moot or only advisory. *See, e. g., United States v. McAnally*, 10 M.J. 270 (C.M.A. 1981); *United States v. Clay*, 10 M.J. 269 (C.M. A.1981).

2. However, the judge is entitled to grant reasonable continuances until requested counsel can be made available, if the unavailability results from temporary conditions or if the decision of nonavailability is in the process of review in command channels.

10 U.S.C. § 867(b)(2), are Hearings Before a Subcommittee of the House Committee on Armed Services, 81st Cong., 1st Sess., on H.R. 2498 (1949), and similar hearings in the United States Senate. As pointed out by the majority, an initial question to be decided is whether this case is properly before the Court under this statutory provision. This provision states that we shall review

> all cases reviewed by a Court of Military Review which the Judge Advocate General orders sent to the Court of Military Appeals for review.

The above sources persuade me that Congress' purpose in enacting this provision was to bring about uniformity among several panels within the same Court of Military Review or between two divergent opinions from different Courts of Military Review. *United States v. Gutierrez*, No. 38,972, 11 M.J. 122 (C.M.A.1981); *United States v. Monett*, 16 U.S.C.M.A. 179, 36 C.M.R. 335 (1966). The historic use made of the certified question belies my thinking. Its use has primarily been an appeal for the Government.[1] *E. g. United States v. Leslie*, No. 39,148, 11 M.J. 131 (C.M.A.1981) (Fletcher, J., dissenting); *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979).

The majority would extend this general application of Article 67(b)(2) to writs practice. I do not approve of its general use as an appeal for the Government from unfavorable decisions of the Court of Military Review during the normal appellate process. Accordingly, I would not extend it to writs practice unless the necessity arises by reason of conflict in Court of Military Review decisions. Such is not the case here.

This matter is also before this Court by order of a majority of this Court allowing the Government to file a petition for review of an adverse decision of the Court of Military Review. Rule 3(b)(2), Rules of Practice and Procedure, United States Court of Military Appeals, 4 M.J. XCVII. I believe this rule must be viewed in the context of our other rules. *See* Rule 15(d), *id.* at CIII.

In particular, certain sections of Rule 25, *id.* at CXIII, indicate that this rule was not intended to provide an appeal for the Government:

> (b) *Service on Judge Advocate General.* Immediately on receipt of any such petition, the Clerk *shall forward a copy of the petition to The Judge Advocate General of the service of which the petitioner is or was a member.*
>
> (c) *Briefs.* Each petition for extraordinary relief shall be accompanied by a brief in support of the petition, unless it is filed *in propria persona. The Court may issue a show cause order in which event the Government shall file an Answer. The petitioner may file a Reply to the Answer.*
>
> (d) *Initial Action by the Court.* The Court may, as the circumstances require, dismiss or deny the petition, order the respondent to show cause and file an Answer within a time specified, or take whatever other action is deemed appropriate. *The Court also may direct the Judge Advocate General of the petitioner's service to furnish counsel to represent him and the respondent.*

(Emphasis added.)

It is apparent from a reading of these three rules that this Court intended an appeal to it from an adverse decision of a Court of Military Review on an extraordinary writ be made by some party other than the Government.

I would hold that the Government has no right to be here either under Article 67(b)(2), or the rules of this Court. The right of the Government to appeal is solely within the authority of Congress. *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); 9 Moore's Federal Practice § 204.07 (2d ed.1980).

## II

Since my Brother Judges have concluded that the Government can come before this

---

[1] It has been used sparingly on behalf of the accused, and rightfully so, for the accused has the right to petition this Court for review under Article 67(b)(3), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(3).

Court in this manner, the next question is whether it is proper to hear them in the present case. I have examined the particular questions of the Judge Advocate General [2] and Appellate Government Counsel.[3] The premise of these questions is that the Navy Court of Military Review found that Judge Redding applied an incorrect standard of law in making his ruling. I do not find the lower court's decision reached this conclusion. In any event, I do not believe that an exercise in semantics by the Government is good cause for expanding the extraordinary writ practice in military courts. *See generally Will v. United States, supra.*

Supervisory mandamus in the military justice system is limited to those cases where a military judge acts beyond authority given him by statute, judicial decision, or regulation. *Dettinger v. United States, supra.* It may not be used to control the decision of a trial judge. A majority of this Court recently said:

> At the beginning of this opinion, we indicated that the office of the extraordinary writ *is not to control the decision of the trial judge.* On the facts of record, another judge might, perhaps, reach a different conclusion as to the unreasonableness of the delay, and as to the corrective action required. However, *no vio-*

*lation of statute or decisional law or any provision of the Air Force Manual appears in the actions taken by the respective trial judges in these cases.* Consequently, no grounds exist for extraordinary relief from those decisions.

*Dettinger v. United States, supra* at 224 (Emphasis added.)

Here, there is no claim that the military judge had no authority to decide the question of the availability of individual military counsel.[4] Instead, the argument made by the Government is that the military judge had no authority to make a ruling on this question based on an incorrect standard of law.

Such an argument I find irrelevant to the present case. The Navy Court of Military Review found that Judge Redding's erroneous decision was a result of his misapplication of the proper standard for review of abuse of discretion. *See Will v. United States, supra* at 103, 88 S.Ct. at 278. In any event, I would not open the floodgates for extraordinary writs to this Court or the Courts of Military Review in such unclear and disputable circumstances. *Id.* at 96, 88 S.Ct. at 274.

### III

Proceeding to the merits of the majority opinion, I first note that it ignores the

---

**2.** "It is requested that action be taken with respect to the following issue:

Was the United States Navy Court of Military Review correct in determining that it lacked authority to grant the extraordinary relief requested, where it factually concluded that the general court-martial trial judge used an erroneous standard of law in his review of the determination of the reasonable availability of a requested individual military counsel?"

**3.** Statement of Issues:

I. WHETHER THE UNITED STATES NAVY COURT OF MILITARY REVIEW WAS CORRECT AS A MATTER OF LAW WHEN IT HELD THAT "THE EXTRAORDINARY RELIEF REQUESTED BY THE UNITED STATES IS NOT WITHIN OUR POWER TO GRANT" IN VIEW OF THE COURT'S FACTUAL CONCLUSION THAT THE RESPONDENT SUBSTITUTED HIS JUDGMENT FOR THAT OF THE COMMANDING GENERAL, CAMP LE-

JEUNE, ON THE PRIMARY QUESTION OF THE REASONABLE AVAILABILITY OF REQUESTED MILITARY COUNSEL?

II. WHETHER A REQUESTED WRIT OF MANDAMUS SHOULD ISSUE DIRECTING RESPONDENT TO UTILIZE A CORRECT STANDARD OF LAW AND RECONSIDER HIS DECISION THAT THE COMMANDING GENERAL, CAMP LEJEUNE, ABUSED HIS DISCRETION WHEN IT HAS BEEN FACTUALLY CONCLUDED THAT THE RESPONDENT SUBSTITUTED HIS JUDGMENT FOR THAT OF THE COMMANDING GENERAL, CAMP LEJEUNE, ON THE PRIMARY QUESTION OF THE REASONABLE AVAILABILITY OF REQUESTED MILITARY COUNSEL?

**4.** *United States v. Kelker,* 4 M.J. 323 (C.M.A. 1978); *United States v. Quinones,* 1 M.J. 64 (C.M.A.1975); *United States v. Mitchell,* 15 U.S.C.M.A. 516, 36 C.M.R. 14 (1965).

specific questions of the Judge Advocate General and Appellate Counsel. Besides this, it is based on a factual assumption which is inaccurate and which fatally flaws its rationale. Finally, and more importantly, the opinion wreaks considerable havoc within the very foundations of our military justice system.

My reading of the majority opinion reveals that this Court has ruled that the United States Navy Court of Military Review erred in *United States v. Redding*, 8 M.J. 719 (C.M.A.1979). In particular, the lower court was wrong when it concluded that it had no authority to grant extraordinary relief to the Government in the present case. This ruling rests on the legal conclusion "that a [military] judge has no authority [in any case] to dismiss charges referred to trial, or otherwise prevent further proceedings in the case, because he concludes that the command determination of nonavailability is so wrong as to constitute an abuse of discretion." 11 M.J. 112. *Cf. United States v. Mitchell,* 15 U.S. C.M.A. 516, 36 C.M.R. 14 (1965), and *United States v. Mickel,* 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958). The majority assumes that this occurred factually in the present case. Such an assumption belies the facts of this case and obfuscates the real issue at stake on this appeal.

In the Appendix to this opinion, I have provided a chronology as to the important events in this case. It is clear that Captain Redding, the trial judge, ruled on May 4, 1979, that the drastic remedy of dismissal was not appropriate in this case simply because Captain Clark was not made available to represent Seaman Pickens as he ordered.[5] Accordingly, there was no dismissal on this ground in the present case. The trial judge has taken two other actions since that time. On May 4, 1979, he ordered that proceedings in the case be abated and removed

from the trial docket with the option of either party or the Court on its own initiative to reopen the case for consideration of new matters. On July 15, 1980 (over one year later), after reopening the court-martial to entertain *a demand for speedy trial* by Seaman Pickens, he ordered the Government to show cause on August 4, 1980, why the charges should not be dismissed. In my opinion neither of these orders of the trial judge effectively precludes prosecution of Seaman Pickens or is tantamount to a final disposition of the case as assumed by the majority opinion.

Turning to the abatement order of the trial judge, I note that he took such action on May 4, 1979, without objection from trial counsel and at his suggestion. Trial counsel defined abatement as "a temporary suspension of further proceedings in the suit because of want of proper parties" in his answer to the April 26, 1979, show cause order of the military judge. Moreover, the record of trial states:

MJ: This case will be removed from the trial docket of this Court. Either counsel will have the opportunity to petition this Court to reset this case at some future time if they have any matters which they feel should be presented to this Court and which are necessary for determination by this Court, including the setting of a trial date or dismissal of the charges if the counsel feel that is appropriate in the future.

Does either counsel have anything further?

ATC: No, Your Honor. I would only ask that—May the Government assume that essentially the terms of the abatement are such that the abatement might reasonably be expected to terminate if the Government indeed produces Captain Clark, that is to say, the

---

5. The military judge stated: "This Court had previously ordered the Government to—or given the Government the opportunity to show cause why the charges in this case should not be dismissed. Based upon the evidence that I have received and the arguments presented by both counsel, it is the opinion of this Court that the Government has shown cause why the charges should not be dismissed in this case."

abatement would continue unless and until either Captain Clark is produced or for other reasons the charge is dismissed?

MJ: Well, those would seem to be the only conditions that come readily to mind, Counsel, but I'm not willing to limit either counsel in presenting matters to this Court for further consideration.

On May 11, 1979, trial counsel requested that the military judge reverse his ruling and allow the case to proceed. He noted that his communications with Captain Clark's command indicate his situation of availability "seems to be getting worse, and not better." The message from General Barker on May 11, 1979, stated that Captain Clark "will not be avail[able] in June or at any time in the forseeable future." The majority of this Court found, as asserted by trial counsel, that the abatement order operated in fact as an effective curtailment and permanent forestalling of the government's right to prosecute this case. I join the United States Navy Court of Military Review in rejecting this argument. *See United States v. Redding, supra.*

Article 40, UCMJ, 10 U.S.C. § 840, provides that a "military judge . . . may, . . . , grant a continuance to any party for such time, and as often, as may appear to be just." *See* para. 58*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). In view of his ruling on the question of Captain Clark's availability, it was reasonable for the military judge to resolve this stand-off with General Barker by means of a continuance of the proceedings. *See* Article 39(a)(1), UCMJ, 10 U.S.C. § 839(a)(1). The Government was still provided ample opportunity to continue its prosecution of Seaman Pickens. First, with the additional times provided by the military judge, the convening authority, General Barker, and the Judge Advocate General of the Navy (*see* Article 6(a), UCMJ, 10 U.S.C. § 806(a)), could make additional efforts to comply with the trial judge's ruling. If they were successful, this matter could

be brought to the attention of the military judge and the trial could proceed. Second, with the passage of time, Captain Clark's employment situation might have changed so as to convince General Barker that this counsel could be made available to defend Seaman Pickens. No serious argument can be made that Captain Clark *never* would be reasonably available to represent the accused. Finally, Seaman Pickens may decide to forego the representation of Captain Clark. In view of these alternatives left open to the Government, it is not correct to say that Judge Redding's abatement order was tantamount to a final disposition of the case. Moreover, I believe it is contrary to the Code to deny him the power to control the proceedings in this manner at the trial level.

I do not have the record of trial before me which evidences the proceedings in this case on July 15, 1980. The Government in its brief and in a message attached thereto stated that a demand for speedy trial was made in the case. I presume that Seaman Pickens made this request. In any event, the military judge having continued this case for over 14 months, ordered the Government to show cause why the charges should not be dismissed. In my mind, such a ruling is also not tantamount to final disposition of this case.

The hearing to be held on August 4, 1980, was directed toward the issue of whether the accused Pickens had been denied a speedy trial. *See* Articles 10 and 33, UCMJ, 10 U.S.C. §§ 810 and 833, respectively. *See also* U.S.Const. amend. VI. The appellant's confinement during this period was a result of his earlier court-martial sentence. *Cf. United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Under such circumstances, dismissal is not automatic simply because of the length of the delay. In any event, other factors normally considered under Articles 10 or 33 (*United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973)), or the sixth amendment (*Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–2192, 33 L.Ed.2d 101 (1972)), would have to be developed at the hearing and

considered by the military judge before dismissal could be adjudged. In any event, dismissal would not simply be on the basis of the denial of individual military counsel nor would it be beyond the judge's authority. *See Dettinger v. United States, supra.*

Turning now to the import of the majority opinion, I believe it reduces the military judge in most instances to a court reporter without power or authority to insure compliance with his judicial orders. Unless the authority to dismiss the case is provided as a matter of statutory, decisional or regulatory law for an error perceived by the military judge at trial, the majority opinion provides him no option but to make a record and refer the matter for later consideration by an appellate court. The court-martial will continue uncorrected, respect for the role of the military judge will be eroded, and the accused must forego his rights to avoid a finding of no prejudice at a later date.

Article 26, UCMJ, 10 U.S.C. § 826, provides that the "military judge [will] *preside* over each open session of the court-martial to which he has been detailed." (Emphasis added.) More importantly, Article 39(a)(1) specifically provides that a military judge may call the court into session for purposes of "hearing and *determining* motions raising defenses or objections which are capable of determination without trial of the issues." (Emphasis added.) These congressional enactments to my mind do not anticipate that the military judge shall stand powerless in the face of the deliberate refusal of military authorities to comply with his decisions and rulings.[6]

I cannot and will not join in the majority's judicial emasculation of our military justice system.

## APPENDIX

### CHRONOLOGY

| | |
|---|---|
| June 23, 1978: | Seaman Pickens convicted at general court-martial and placed in confinement. (CHL 21 months). |
| November 18, 1978: | Seaman Pickens allegedly escapes from confinement and allegedly deserts. |
| January 5, 1979: | Seaman Pickens allegedly apprehended. |
| March 6, 1979: | Charges of escape from confinement and desertion referred to general court-martial by Commandant 11th Naval District (San Diego). |
| March 19, 1979: | Seaman Pickens' request for Captain Clark as Individual Military Counsel under Article 38(b), UCMJ, transmitted by message to CG, Camp Lejeune. Expected length of trial is 3 days. |
| March 20, 1979: | Request denied by General Barker, CG, Camp Lejeune, N. C.; *see* para. 48*b*, Manual. (By message) |
| April 9, 1979: | Article 39(a) session of court-martial opened by Captain Redding, military judge, to arraign Seaman Pickens. |

---

6. Since March 1979, more than two years ago, General Barker has not seen fit to make Captain Clark available for a three-day trial.

Detailed defense counsel, Lieutenant Solomon, makes written and oral motion for appropriate relief.

He asserts that Captain Clark was reasonably available to defend Pickens as individual military counsel under Article 38(b), UCMJ.

He requests that military judge—
1. declare Captain Clark reasonably available
2. order Captain Clark to defend Pickens
3. or that charges be dismissed
4. or that proceedings be abated (R. 8)

Defense requests General Barker be subpoenaed in support of his motion. Military judge requests defense counsel to prepare summary of expected testimony. Court adjourned.

(1305) Court Reopened: Defense explains inability to contact General Barker. Military judge accepts as evidence messages of request and denial of Captain Clark. (App. Ex. IIa and IIb). Military judge takes judicial notice of section 1904(a), Navy JAG Manual, and hears argument from both counsel on issue of production of General Barker as witness on motion. Military judge rules General Barker is a material witness and orders written interrogatories and cross-interrogatories. Court adjourned.

(1322) Court reopened: Defense submits interrogatories which were given to trial counsel.

April 11, 1979: Trial counsel informs military judge that General Barker had no personal knowledge of information sought in interrogatories. Answers provided by Captain Clark and his supervisor, Major Roundtree. Case continued.

(1359) Court reopened: Stipulation of fact accepted by judge and request for General Barker withdrawn by defense. App. Ex. Ia.

Military judge rules that General Barker abused his discretion in not finding Captain Clark reasonably available to represent Seaman Pickens, and

1. finds Captain Clark reasonably available:
2. expects Captain Clark to be present at next session of trial;
3. orders detailed defense counsel to brief him on case (R. 41–43).

April 20, 1979: Court reopened: Government counsel requests reconsideration of military judge's decision that Captain Clark is reasonably available. Military judge considers points and authorities submitted by trial counsel. He rescinds order that Captain Clark and accused form attorney-client relationship (R. 51). He reaffirms original decision.

Government requests a 3-week continuance to appeal decision under *Dettinger* (R. 53). Military judge denies motion for continuance and trial scheduled for April 26, 1979, as before. Judge understands Government will seek extraordinary writ (R. 54).

April 26, 1979: Court reopened. Government files more message traffic with court between convening authority and General Barker. Messages indicate that Captain Clark will not be made available in near future. On

behalf of convening authority, trial counsel asks for reconsideration. He denies motion. He then authenticates record of trial for government appeal (R. 56–58).

Military judge then states:

"I am going to continue these proceedings until Friday the 4th of May 1979 at which time the govenment will have the opportunity to show cause to this court why these charges should not be dismissed." (R. 58).

May 1, 1979: Trial counsel's first petition for extraordinary relief filed at Navy Court of Military Review. (Misc. Dkt. 79–8).

It seeks:

 1. temporary order restraining judge from dismissing charges with prejudice until NCMR has ruled.

 2. final ruling on writ of mandamus reversing ruling that Captain Clark was available.

or–

writ of prohibition issued to trial judge that charges not be dismissed because Captain Clark is not made available.

May 3, 1979: Navy Court of Military Review Denies Government's Petition for Extraordinary Relief (Misc. Dkt. 79–8).

Court rules that it is inappropriate at this time to exercise extraordinary relief power. It finds trial judge's ruling (order that Captain Clark is available and be present or Government show cause why charges not be dismissed) does not amount to termination of proceedings, dismissal of Government's case, or forestallment of jurisdiction of CMR. Military judge ordered hearing on question whether dismissal appropriate as matter of law. The Government can present arguments there and come back if judge dismisses case.

May 4, 1979: Court reopened and trial counsel filed a written answer to military judge's show cause order as well as decision of NCMR. The Government asserts that the case should not be dismissed with prejudice but it suggested abatement of proceedings as the appropriate remedy.

Military judge rules that Government has shown cause why charges should not be dismissed and proceedings abated as requested by Government (R. 78). Case ordered removed from trial docket with option of counsel to reopen at later date.

May 23, 1979: Trial counsel's second petition filed with NCMR for extraordinary relief in form of a Writ of Mandamus to trial judge to permit Government to proceed with trial of *United States v. Pickens* [—— M.J. —— (N.C.M.R.1981)] (Misc. Dkt. 79–9). He states trial judge was incorrect in ruling Pickens was entitled to Captain Clark as IMC because–

 a. he exceeded his statutory authority
 b. it represented a clear abuse of discretion
 c. he employed a plainly erroneous standard
 d. contrary to his own special findings.

| | |
|---|---|
| December 21, 1979: | NCMR denies petition for extraordinary relief in form of mandamus to compel trial judge to proceed with court-martial. Court rules abatement of proceedings "constitutes 'no violation of statute or decisional law or any provision of [regulations].'" |
| January 9, 1980: | JAG certifies decision of Navy Court in Misc. Dkt. 79–9 to USCMA for review of correctness of decision that court had no power of extraordinary relief simply because trial judge's ruling was erroneous. |
| January 15, 1980: | Government appeals Navy Court decision denying Extraordinary Relief, under Rule 3(b)(2), USCMA Rules. |
| July 15, 1980: | Judge Redding opens trial because of demand for speedy trial and he announces hearing on August 4, 1980, where Government must show cause why charges should not be dismissed. |
| July 21, 1980: | Government petitions this Court to stay proceedings. |
| July 30, 1980: | Judge Cook as acting Chief Judge of this Court stays proceedings of trial court. |
| November 21, 1980: | Both appellate actions are consolidated for oral argument. |